FILED/RECEIVED TRUE COPY
ATTEST: WILLIAM M. MCCOOL
Clerk, U.S. District Court
Western District of Washington

By _Emily Nero_
Deputy Clerk

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* Subject Facebook Account 1 and Victim Facebook Account 1, as further described in Attachment A | ) ) ) ) ) Case No. MJ17-528 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Subject Facebook Account 1 and Victim Facebook Account 1, as further described in Attachment A, which is attached hereto and incorporated herein by reference.

located in the **Northern** District of **California** , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, which is attached hereto and incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2243(a)(1)(2) | Sexual Abuse of a Minor |
| 18 U.S.C. § 1153(1) | Offenses Committed in Indian Country |

The application is based on these facts:

See Affidavit of Colleen Sanders, FBI, attached hereto and incorporated herein by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_Colleen B. Sanders_
*Applicant's signature*

COLLEEN SANDERS, SPECIAL AGENT, FBI
*Printed name and title*

Sworn to before me pursuant to CrimRule 4.1.

Date: 12|22|17

_____
*Judge's signature*

City and state: SEATTLE, WASHINGTON

BRIAN A. TSUCHIDA, U.S. MAGISTRATE JUDGE
*Printed name and title*

2017R00785

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

This warrant applies to information associated with the Facebook accounts:

SUBJECT FACEBOOK ACCOUNT 1:
Name: Elijah Frank Jackson, Jr.
ESP User ID: 100009508723232
Facebook URL: https://www.facebook.com/elijah.frank.798

VICTIM FACEBOOK ACCOUNT 1: Facebook Profile:
Name: [Minor Victim]
ESP User ID:
Facebook URL: https://www.facebook.com/minor.victim.5437

As well as other subscriber and log records associated with the accounts, which are stored at premises owned, maintained, controlled, and operated by Facebook.com, an electronic communications service and remote computing services provider headquartered at 1601 Willow Road, Menlo Park, California, 94025.

ATTACHMENT A - 1
USAO #2017R00785

1                                   **ATTACHMENT B**

2   **I. Information to be disclosed**

3            To the extent that the information described in Attachment A is within the

4 possession, custody, or control of Facebook, including any communications, records,

5 files, logs, posts, payment records, or information that has been deleted but is still

6 available to Facebook, or has been preserved pursuant to requests made under 18 U.S.C.

7 § 2703(f) on or about June 23, 2017, and extended on or about October 16, 2017,

8 Facebook is required to disclose the following information to the government for each

9 account or identifier listed in Attachment A:

10 //

11 //

12 //

13 //

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.      The contents of all communications associated with the account,
2    including stored or preserved copies of content sent to and from the account, draft
3    communications, the source and destination of any communications, the date and time at
4    which the communications were sent;

5          b.      All records or other information regarding the identification of the
6    account, to include full name, physical address, telephone numbers and other identifiers,
7    records of session times and durations, the date on which the account was created, the
8    length of service, the IP address used to register the account, log-in IP addresses
9    associated with session times and dates, account status, alternative e-mail addresses
10   provided during registration, methods of connecting, log files, and means and source of
11   payment (including any credit or bank account number);

12         c.      The types of service utilized;

13         d.      All records or other information stored at any time by an individual
14   using the account, including address books, contact and buddy lists, calendar data,
15   pictures, files, the contents of Facebook Messenger, all records of payments made
16   through Facebook, Facebook Photos Application, Faceprint, Facebook Newsfeed,
17   Photoprint, and any accounts associated with SUBJECT ACCOUNTS; and

18         e.      All records pertaining to communications between the Provider and
19   any person regarding the account, including contacts with support services and records of
20   actions taken.

21   //

22   //

23   //

24

25

26

27

28

ATTACHMENT B - 2
USAO #2017R00785

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.    INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor), for each account or identifier listed on Attachment A, including information pertaining to the following matters:

        a.    All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

        b.    Any address lists or "friend"/contact lists associated with the specified account;

        c.    Any messages, posts, photographs, or documents relating to the relationship between MV and Elijah Frank Jackson, Jr. and any messages and posts between MV and Elijah Frank Jackson, Jr.;

        d.    All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;

        e.    Any and all other log records, including IP address captures, associated with the specified account;

        f.    Any records of communications between Facebook, and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

3      I, _____, attest, under penalties of perjury

4   under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

5   information contained in this declaration is true and correct.  I am employed by

6   Facebook, and my official title is _____.  I am a custodian

7   of records for Facebook.  I state that each of the records attached hereto is the original

8   record or a true duplicate of the original record in the custody of Facebook, and that I am

9   the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I

10   further state that:

11      a.      all records attached to this certificate were made at or near the time of the

12   occurrence of the matter set forth, by, or from information transmitted by, a person with

13   knowledge of those matters;

14      b.      such records were kept in the ordinary course of a regularly conducted

15   business activity of Facebook; and

16      c.      such records were made by Facebook as a regular practice.

17      I further state that this certification is intended to satisfy Rule 902(11) of the

18   Federal Rules of Evidence.

19

20   Date: _____   Signature: _____

21

22

23

24

25

26

27

28

ATTACHMENT B - 4
USAO #2017R00785

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**AFFIDAVIT**

2

3    STATE OF WASHINGTON              ss

4

5    COUNTY OF PIERCE

6

7          I, Colleen B. Sanders, being first duly sworn under oath, depose and state as

8    follows:

9                              **I.  INTRODUCTION**

10          1.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and

11   have been so employed for over fifteen years.  I am currently assigned to the Poulsbo

12   Resident Agency of the Seattle Division.  While employed as an FBI Agent, I have led

13   investigations and/or participated in investigations of a wide array of federal criminal

14   violations, including bank robbery, fugitives, drug crimes, organized crime, crimes

15   against children, and crimes occurring in Indian Country, including those involving the

16   sexual abuse of a minor. The latter is the subject of this affidavit.

17          2.      My training included courses in law enforcement techniques, federal

18   criminal statutes, conducting complex criminal investigations, physical and electronic

19   surveillance techniques, evidence collection techniques and the execution of search

20   warrants.  During my employment with the FBI, I have attended periodic seminars and

21   continued training.  Over the last few years my continued training has focused primarily

22   on Indian Country Crimes and the collection of evidence.

23          3.      I make this Affidavit in support of an application under Rule 41 of the

24   Federal Rules of Criminal Procedure for a warrant for information associated with certain

25   accounts, Facebook User ID 100009508723232 ("SUBJECT ACCOUNT 1") and

26   Facebook User ID                        ("VICTIM ACCOUNT 1"), that are stored at the

27   premises controlled by Facebook, a social media platform headquartered at 1601 Willow

28   Road, Menlo Park, CA 94025. The accounts to be searched are fully described in

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 1
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.      The facts set forth in this Affidavit are based on my own personal investigation; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; the review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

a.      Because this Affidavit is submitted for the limited purpose of providing sufficient facts necessary to determine whether there is probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are relevant to the determination of probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor) and 18 U.S.C. §1153(a) (Offenses Committed in Indian Country) will be found in the SUBJECT ACCOUNT 1 and the VICTIM ACCOUNT 1.

## II.  SUMMARY OF INVESTIGATION

5.      On June 10, 2017, I was contacted by the Neah Bay Department of Public Safety regarding an investigation of a possible sexual assault which occurred the previous day involving a MINOR VICTIM (MV), who was a thirteen year old female, and Elijah F. Jackson Jr. (Jackson), who was an eighteen year old male.  During the initial investigation, Neah Bay Police Officers were contacted by an individual who reported seeing three young people walking east towards Bayview Ave. from the Health Clinic in Neah Bay, WA, holding a person up between them who appeared to be intoxicated.

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 2
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  When an officer located those individuals, he saw a male with a backpack on who was

2  walking away from two females.  That officer made contact with the females and noted

3  MV was sitting against a fence with her friend, J.W., standing over her.  MV asked the

4  officer not to tell her mom.  The officer noted that MV's words were heavily slurred and

5  she was swaying even as she was sitting.  He asked MV if she meant not to tell her mom

6  she had been drinking, to which she replied yes.  MV acknowledged drinking "something

7  Daniels."  When the officer asked MV where she had come from, she gave directions

8  which were unclear.  The officer then noticed that MV's pants were down near her knees

9  and asked her to pull them up.  She stood up, but had a difficult time standing and barely

10 got her pants pulled up before she almost fell down.  The officer told her to sit down and

11 asked J.W. why MV's pants were down, to which she replied that she did not know.  The

12 officer asked J.W. if the male he saw was with them, and she said yes, but that she did

13 not know who he was.  The officer then requested for a second officer to make contact

14 with the male.

15        6.       The first officer then went back to speak to MV, who stood up and stated

16 that she wanted to kill herself.  MV started stumbling into the street and the officer placed

17 her under arrest and put her into his patrol vehicle.  The officer asked J.W. where they

18 had come from and she stated from the junkyard.  J.W. explained that MV had called

19 J.W. and asked her to come get her.  According to J.W., when she met MV at the

20 junkyard, the male was already with her.  The officer noted the junkyard described by

21 J.W. is on Makah Passage near Woodland Avenue, in Neah Bay, WA.  This location is

22 on Tribal Trust Land within the exterior boundaries of the Makah Reservation.

23        7.       In the meantime, the second officer had made contact with the male subject

24 walking eastbound on Bayview Ave. near the Makah Mini Mart.  The male identified

25 himself as Elijah F. Jackson Jr.  Jackson told the officer that he had received a call from

26 MV to help her.  Jackson said he found MV by the junkyard road and when he arrived

27 there, MV was already with her friend, J.W.  The officer asked Jackson if he had been

28 drinking, to which he replied no.  The officer asked to see inside Jackson's backpack.

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 3
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   When Jackson opened his backpack, the officer saw a Powerade bottle with a dark liquid
2   in it.  Jackson advised that the liquid was Jack Daniels.  Among other items in the pack,
3   the officer also found several un-opened condoms and several cell phones.  Jackson was
4   asked if he gave any alcohol to MV, or if he was present when she was drinking, to which
5   he replied no.  Jackson told the officer he was trying to catch the transit bus back to La
6   Push, WA.  The officer confiscated the alcohol and let Jackson go.

7       8.      After being transported to the police station, MV submitted to a PBT
8   (Preliminary Breath Test) with a result of .152 at 19:56 hours.  MV was covered in
9   scratches and dirt, and her clothes were wet and muddy.  MV was asked about her
10  injuries and described a trail near the junkyard that she and Jackson were alone at.  MV
11  was asked if anything happened with Jackson and she replied that she didn't want to
12  "fuck up his life."  MV stated that she wanted to have sex with Jackson, but he didn't.
13  MV was asked if they kissed, which she said they did.  MV repeated several times that
14  she wanted to have sex with Jackson and he did not.  MV was again asked if they had
15  sex.  MV said no and then said, "I forced his dick inside of me."  MV later described a
16  broken down shed they were on or in.  A police officer went to the location and found a
17  condom with no packaging for it.  The condom was collected and placed into evidence.

18      9.      MV was released to her mother, who agreed to have MV checked for
19  possible sexual assault.  MV's mother took MV for a SANE (sexual assault nurse
20  examiner) exam at Harrison Medical Center in Bremerton, WA.

21      10.     Upon arrival at Harrison Medical Center in the early morning hours of June
22  10, 2017, MV consented to a complete medical examination including genital and anal
23  assessment and medical forensic photography.  Numerous swabs and samples were taken
24  during the exam and placed into a SANE kit, which was collected by the FBI on June 19,
25  2017.  That kit and accompanying evidence was later submitted to the FBI lab for
26  analysis.  The results of those examinations are still pending.

27      11.     Results of the physical exam on the same date revealed MV had several
28  abrasions and contusions on her extremities, a large amount of debris and dirt particles in

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 4
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  her genital area and a 3 mm linear abrasion on her posterior fourchette, which is a

2  common location for genital injury following a sexual assault.

3          12.     During a child/adolescent forensic interview conducted by an FBI forensic

4  interviewer on June 22, 2017, MV discussed the details of the night she got "drunk." MV

5  recalled it was a Friday and she was supposed to be going to a friend's house after school,

6  but decided to hang out with Jackson instead. MV recalled that she was offered whisky

7  by Jackson's friend, M.W., and that she and M.W. were drinking, but Jackson was not.

8  MV acknowledge that she was afraid to talk about what happened that night with Jackson

9  and his friend because she was embarrassed and worried about what would happen if she

10 talked about it.

11         13.     Later in the interview, MV acknowledged having sex with Jackson, but said

12 she kind of forced it, and made him do it. When asked to explain that, MV said, "Uh, I

13 think I forced myself on to him.  Like he kept telling me no, but I did it anyway." MV

14 described that she pulled Jackson's clothes off and they had sex.  She described the body

15 parts they used to have sex as the "dick" and the "vagina."  MV said she was laying on

16 her back during the sex and Jackson was on top of her.  MV said she wanted to have sex

17 with Jackson.

18         14.     At the conclusion of the interview, MV said that she talked to Jackson once

19 on "Messenger" (believed to be referring to Facebook Messenger) since the incident.

20 MV acknowledged that she still liked Jackson and would like to see him again.  MV said

21 Jackson knew how she felt about him.

22         15.     I interviewed Jackson on November 16, 2017.  Jackson said he was

23 introduced to MV through social media by J.W., and they became good friends.  Jackson

24 said that he mainly used Facebook Messenger to communicate with MV and he said he

25 knew her for a couple of months prior to the incident in question.

26         16.     According to Jackson, he contacted MV via Facebook and told her he and

27 his friend, M.W., were traveling to Neah Bay, WA, and they arranged to get together the

28 next day after MV got out of school.  Jackson brought the Jack Daniels, but he did not

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 5
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  drink.  Jackson said that MV and M.W. drank straight out of the bottle, and that after

2  drinking MV started climbing on things and falling, which made Jackson realize that she

3  was intoxicated.

4        17.    Jackson initially described MV as coming on to him by pulling down her

5  pants and telling him to come over to her, and said he rebuffed her advances because he

6  knew she was young and he could get in to trouble.  Jackson also initially denied kissing

7  or doing anything with MV because he knew he was too old for her and could get into

8  deep trouble as a result.

9        18.    After being confronted with information and evidence gathered during the

10  investigation, Jackson acknowledged that he and MV had strong feelings for one another

11  and were "together" at that point.  Prior to that day they had made plans to make their

12  relationship official, and had communicated about having sex together on Facebook.

13  Jackson denied forcing MV to engage in sex and said it was something they both wanted.

14        19.    Jackson said the location he and MV were in when they had sex was where

15  the broken down cars and junkyard were located.  Jackson also said that he used a

16  condom and threw it when they were done.  Jackson did not believe the scratches, bruises

17  and dirt MV had on her body were the result of them having sex on the ground.  He

18  believed she got them from slipping and falling numerous times as they were walking

19  back toward town afterward.

20        20.    In order to identify Jackson and MV's Facebook accounts, I provided their

21  names, ages, and geographical information to a FBI analyst, who conducted open source

22  searches of publicly available information in Facebook to identify the accounts.  The

23  analyst then showed me the profile pictures and other photographs in the account for the

24  SUBJECT ACCOUNT 1 and the VICTIM ACCOUNT 1, which enabled me to confirm

25  that the accounts belong to Jackson and MV.

26        **III.   BACKGROUND REGARDING FACEBOOK'S SERVICES**

27        21.    Facebook, Inc. owns and operates the free-access social networking website

28  Facebook.com, accessed at http://www.facebook.com.  Facebook allows its subscribers to

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 6
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  establish personal accounts.  Subscribers can then use their accounts to share written

2  news, communications, photographs, videos, and other information with other Facebook

3  users, and sometimes with the general public; to purchase and sell things, play games,

4  and engage in numerous additional computer based activity.

5        22.      A Facebook subscriber typically creates a personal profile using photos of

6  him/herself and a name or nickname their friends and family know.  This permits friends

7  and family to find the subscriber's account.  Facebook asks subscribers to provide basic

8  contact information.  This may include the subscriber's full name, birth date, contact e-

9  mail addresses, physical address (city, state, zip code, country), telephone numbers,

10 screen names, associated websites, and other personal identifiers.  Subscribers can list

11 credit, debit or other financial account numbers for use when making purchases on or

12 through Facebook.  Facebook also asks subscribers to create an account password.  The

13 password, known only to the subscriber (and anyone to whom s/he gives it) limits access

14 to the account.  Only someone logged in with the password can change profile details,

15 profile photographs or privacy settings.[1]  Only a person who has logged into the account

16 with a password can post on the "Wall,"[2] send messages (similar to text messaging), or

17 send friend requests under the identity of the account owner.  Facebook subscribers rarely

18 share the password to their accounts.  There is little purpose in sharing passwords,

19 because anyone whom the account owner permits can post messages on the user's "Wall."

20       23.      Subscribers can select different levels of privacy for the communications

21 and information associated with their Facebook accounts.  By adjusting these privacy

22 settings, a subscriber can make profile information, status updates, check-ins, and other

23 posted material available only to himself or herself, to particular Facebook users, to all

24

25

26 _____

27 [1] Subscribers must also be logged into their accounts to make purchases, post ads, make comments, adjust
   notifications they receive and to change other aspects of their accounts.

28 [2] A "Wall" in a particular subscriber's Facebook page is a space where the subscriber and his or her "Friends" (if
   permitted by the subscriber) can post and respond to status updates, check-ins,  messages, images, attachments, and
   links.

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 7
USAO #2017R00785

1    Facebook users, or to anyone with access to the Internet, including people who are not
2    Facebook users.

3        24.    Facebook subscribers can create personal profiles that include photographs,
4    personal statistics such as birthdate, schooling, employer, lists of personal interests, and
5    other information.  Subscribers can also post "check-ins"[3] and "status updates" about
6    their whereabouts and actions, as well as links to videos, photographs, articles, and other
7    items available elsewhere on the Internet.  Facebook subscribers can also post
8    information about upcoming "events," such as social occasions, by listing the event's
9    time, location, host, and guest list.

10       25.    A subscriber can also connect directly with individual Facebook users by
11    sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the
12    request, then the two users will become "Friends" for purposes of Facebook and can
13    exchange communications or view information about each other.  Each Facebook user's
14    account includes a list of that user's "Friends" and a "News Feed," which highlights
15    information about the user's "Friends," such as status updates, check-ins, profile changes,
16    and upcoming events.  Subscribers may also join groups or networks to connect and
17    interact with other users who are members of the same group or network.  A Facebook
18    network or group has options for adjusting privacy settings to grant or limit viewing or
19    posting to the group's page.

20       26.    In Facebook's Photos application, subscribers can upload an unlimited
21    number of albums and photos.  The Photos application can capture and store a geometric
22    representation of a face (known as Faceprint data).  Subscribers can "tag" (i.e., label)
23    other Facebook users depicted in a photo or video.  When a user is tagged in a photo or
24    video, he or she receives a notification of the tag and a link to see the photo or video.

25       27.    For Facebook's purposes, a subscriber's "Photoprint" includes all photos
26    uploaded by that subscriber that have not been deleted, as well as all photos uploaded by

27
28    _____
     [3] A "check-in" accesses the user's mobile device GPS to let friends know exactly where the subscriber is.

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 8
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | any user that have that subscriber tagged in them.  As uploaded, a digital photo often
2 | contains embedded data about when and where it was taken, and other information on its
3 | genesis.  That information is called Exchangeable image file format (EXIF) information.
4 | Facebook "scrapes" this information off of photos before placing them onto a page, but
5 | retains the original data.

6 | 28.   Facebook users can exchange private messages on Facebook with other
7 | users.  These messages, which are similar to e-mail messages, are sent to the recipient's
8 | "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well
9 | as other information.  Facebook users can also post comments on the Facebook profiles
10 | of other users or on their own profiles; such comments are typically associated with a
11 | specific posting or item on the profile.

12 | 29.   Facebook captures and retains, for each subscriber account, data regarding
13 | the date, time, place, and IP addresses (IP Logs)  used when the subscriber accesses
14 | his/her account; actions taken and items viewed while using the account; and subscriber
15 | geographic location, if that setting is enabled.  This data cannot be manipulated by the
16 | subscriber.  Facebook also retains, and makes available to the account subscriber, all
17 | information contained in Appendix A, attached and incorporated by reference.  Material
18 | posted by the subscriber is retained by Facebook until sometime after it is deleted by the
19 | subscriber.

20 | 30.   In Facebook jargon,

21 | •   Subscriber "Basic Contact Information" includes subscriber, name,
22 | birth date, email address(es), physical address (city, state, zip, country), all telephone
23 | numbers, screen name and any associated website;

24 | •   "Basic Subscriber Information (BSI)" is the subscriber's
25 | identification number, name, email address, date and time stamp of account creation,
26 | registered cellular telephone number, record of recent logins, and whether the
27 | subscriber's page is publicly viewable; and

28 |

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 9
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1         •    A "Neoprint" is an expanded view of a given subscriber profile. It
2 includes subscriber profile contact information, friend lists; groups and networks of
3 which the subscriber is a member; "News Feed" information; "Wall" postings;  status
4 updates; links to videos, photographs, articles, and other items; event postings; rejected
5 "Friend" requests; comments; messages; gifts; pokes; tags; and information about the
6 subscriber's access and use of Facebook applications.

7      31.    Facebook subscribers may communicate directly with Facebook about
8 issues relating to their account, such as technical problems, billing inquiries, or
9 complaints from the subscriber or other users.  Social networking providers like
10 Facebook typically retain records about such communications, including records of
11 contacts between the subscriber and the provider's support services, as well records of
12 any actions taken by the provider or subscriber as a result of the communications.

13      22.    The company that operates Facebook.com is Facebook, Inc.  Facebook, Inc.
14 has established a contact address for Law Enforcement and has asked law enforcement to
15 serve warrants either by using a website that Facebook has set up for use of law
16 enforcement, or by postal mail.  The website, street address, and fax number are listed
17 above and incorporated here. Law enforcement regularly uses these to contact Facebook.

18     **IV.  INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

19      23.    Pursuant to Title 18, United States Code, Section 2703(g), this application
20 and affidavit for a search warrant seeks authorization to permit Facebook, and its agents
21 and employees, to assist agents in the execution of this warrant.  Once issued, the search
22 warrant will be presented to Facebook with direction that the company identify the
23 Facebook accounts described in Attachment A to this affidavit, as well as other
24 subscriber and log records associated with the accounts, as set forth in Section I of
25 Attachment B to this affidavit.

26      24.    The search warrant will direct Facebook to create an exact copy of the
27 specified account and records.

28

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 10
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

25.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

26.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software.  It could also be very time-consuming.  Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Keywords used originally need to be modified continuously, based on interim results.  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text.  The data may be saved, instead, in proprietary non-text format.  And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.   Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

27.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of messenger communications, chat logs, files, payment records and documents, that identify any users of the subject account and communications sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

**V. PAST EFFORTS TO OBTAIN EVIDENCE FROM THE SUBJECT ACCOUNT**

28.     I understand the contents of the SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 can only be obtained, in the Ninth Circuit, by means of a search warrant

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 11
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  issued under authority of 18 U.S.C. § 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and Federal

2  Rule of Criminal Procedure 41(e)(2)(b).  On or about on or about June 23, 2017, the FBI

3  sent a preservation letter to Facebook, requesting they preserve the contents related to

4  SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1.  Additionally, on or about October

5  16, 2017, the FBI sent a second letter to Facebook requesting an extension on the

6  preservation of those accounts for an additional 90 days.

## VI.  PROTOCOL FOR SORTING SEIZABLE ELECTRONICALLY STORED INFORMATION

7

8

9          29.     In order to insure agents are limited in their search only to the contents of

10  the SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 and any attachments, stored

11  instant messages, stored voice messages, documents, and photographs associated

12  therewith; in order to protect the privacy interests of other third parties who have

13  accounts at Facebook; and in order to minimize disruptions to normal business operations

14  of Facebook; this application seeks authorization to permit agents and employees of

15  Facebook to assist in the execution of the warrant, pursuant to 18 U.S.C. § 2703(g), as

16  follows:

17          a.      The search warrant will be presented to Facebook, with direction

18  that it identify and isolate SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 and

19  associated records described in Section I of Attachment B.

20          b.      Facebook will also be directed to create an exact duplicate in

21  electronic form of SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 and associated

22  records specified in Section I of Attachment B, including an exact duplicate of the

23  content including all messages stored in SUBJECT ACCOUNT 1 and VICTIM

24  ACCOUNT 1.

25          c.      Facebook shall then provide an exact digital copy of the contents of

26  SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1, as well as all other records

27  associated with the account, to me, or to any other agent of the FBI.  Once the digital

28  copy has been received from Facebook, that copy will, in turn, be forensically imaged

and only that image will be reviewed and analyzed to identify communications and other

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 12
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | data subject to seizure pursuant to Section II of Attachment B.  The original digital copy
2 | will be sealed and maintained to establish authenticity, if necessary.

3 |         d.     I, and/or other agents of FBI will thereafter review the forensic
4 | image, and identify from among the content those items which come within the items
5 | identified in Section II to Attachment B, for seizure.  I, and/or other agents of FBI will
6 | then copy those items identified for seizure to separate media for future use in
7 | investigation and prosecution.

8 |         e.     Analyzing the data contained in the forensic image may require
9 | special technical skills, equipment, and software.  It could also be very time-consuming.
10 | Searching by keywords, for example, can yield thousands of "hits," each of which must
11 | then be reviewed in context by the examiner to determine whether the data is within the
12 | scope of the warrant.  Merely finding a relevant "hit" does not end the review process.
13 | Keywords used originally need to be modified continuously, based on interim results.
14 | Certain file formats, moreover, do not lend themselves to keyword searches, as keywords
15 | search text, and many common electronic mail, database, and spreadsheet applications
16 | (which may be attached to email) do not store data as searchable text.  The data is saved,
17 | instead, in proprietary non-text format.  And, as the volume of storage allotted by service
18 | providers increases, the time it takes to properly analyze recovered data increases as well.
19 | Consistent with the foregoing, searching the recovered data for the information subject to
20 | seizure pursuant to this warrant may require a range of data analysis techniques and may
21 | take weeks or even months.

22 |         f.     Based upon my experience and training, and the experience and
23 | training of other agents with whom I have communicated, it is necessary to seize all
24 | emails, chat logs and documents, which identify any users of the subject account and any
25 | emails sent or received in temporal proximity to incriminating messages/chats which
26 | provide context to the incriminating communications.

27 |
28 |

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 13
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1     30.    Based on the foregoing, I believe there is probable cause that evidence,

2 fruits, and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a

3 Minor) and 18 U.S.C. §1153(a) (Offenses Committed in Indian Country) are located in

4 the SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 as more fully described in

5 Attachment A to this Affidavit.  I therefore request that the court issue a warrant

6 authorizing a search of the SUBJECT ACCOUNT 1 and VICTIM ACCOUNT 1 for the

7 information set forth in section I of Attachment B of this Affidavit, and the seizure of the

8 content more fully described in Section II of Attachment B hereto, incorporated herein by

9 reference of any such items found therein.

10

11

12 Colleen B. Sanders, Affiant
Special Agent

13 Federal Bureau of Investigation

14

15

16    The above-named agent provided a sworn statement attesting to the truth of the

17 contents of the foregoing affidavit on the _22_ day of December, 2017

18

19

20 BRIAN A. TSUCHIDA

21 United States Magistrate Judge

22

23

24

25

26

27

28

AFFIDAVIT OF SPECIAL AGENT COLLEEN B. SANDERS - 14
USAO #2017R00785

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**ATTACHMENT A**

2

**DESCRIPTION OF LOCATION TO BE SEARCHED**

3

This warrant applies to information associated with the Facebook accounts:

4

SUBJECT FACEBOOK ACCOUNT 1:
Name: Elijah Frank Jackson, Jr.

5

ESP User ID: 100009508723232

6

Facebook URL: https://www.facebook.com/elijah.frank.798

7

VICTIM FACEBOOK ACCOUNT 1: Facebook Profile:

8

Name: [Minor Victim]

9

ESP User ID:
Facebook URL: https://www.facebook.com/minor.victim.5437

10

11

    As well as other subscriber and log records associated with the accounts, which
are stored at premises owned, maintained, controlled, and operated by Facebook.com, an

12

electronic communications service and remote computing services provider

13

headquartered at 1601 Willow Road, Menlo Park, California, 94025.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT B**

2 **I. Information to be disclosed**

3       To the extent that the information described in Attachment A is within the

4 possession, custody, or control of Facebook, including any communications, records,

5 files, logs, posts, payment records, or information that has been deleted but is still

6 available to Facebook, or has been preserved pursuant to requests made under 18 U.S.C.

7 § 2703(f) on or about June 23, 2017, and extended on or about October 16, 2017,

8 Facebook is required to disclose the following information to the government for each

9 account or identifier listed in Attachment A:

10 //

11 //

12 //

13 //

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 1
USAO #2017R00785

1          a.      The contents of all communications associated with the account,

2 including stored or preserved copies of content sent to and from the account, draft

3 communications, the source and destination of any communications, the date and time at

4 which the communications were sent;

5          b.      All records or other information regarding the identification of the

6 account, to include full name, physical address, telephone numbers and other identifiers,

7 records of session times and durations, the date on which the account was created, the

8 length of service, the IP address used to register the account, log-in IP addresses

9 associated with session times and dates, account status, alternative e-mail addresses

10 provided during registration, methods of connecting, log files, and means and source of

11 payment (including any credit or bank account number);

12          c.      The types of service utilized;

13          d.      All records or other information stored at any time by an individual

14 using the account, including address books, contact and buddy lists, calendar data,

15 pictures, files, the contents of Facebook Messenger, all records of payments made

16 through Facebook, Facebook Photos Application, Faceprint, Facebook Newsfeed,

17 Photoprint, and any accounts associated with SUBJECT ACCOUNTS; and

18          e.      All records pertaining to communications between the Provider and

19 any person regarding the account, including contacts with support services and records of

20 actions taken.

21 //

22 //

23 //

24

25

26

27

28

ATTACHMENT B - 2
USAO #2017R00785

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.   INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 2243(a)(1)(2) (Sexual Abuse of a Minor), for each account or identifier listed on Attachment A, including information pertaining to the following matters:

a.   All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

b.   Any address lists or "friend"/contact lists associated with the specified account;

c.   Any messages, posts, photographs, or documents relating to the relationship between MV and Elijah Frank Jackson, Jr. and any messages and posts between MV and Elijah Frank Jackson, Jr.;

d.   All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;

e.   Any and all other log records, including IP address captures, associated with the specified account;

f.   Any records of communications between Facebook, and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

ATTACHMENT B - 3
USAO #2017R00785

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CASE 2:17-mj-00528-BAT   Document 4   Filed 12/22/17   Page 25 of 25


**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c. such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.


Date: _____   Signature: _____

ATTACHMENT B - 4
USAO #2017R00785

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970